**Joseph C. Alamilla (9785)**
LAW OFFICE OF JOSEPH C. ALAMILLA
P.O. Box 543
Centerville, Utah 84014
Telephone: (801) 232-2666
Facsimile:  (866) 254-9597
Email: joseph@jcalegalsolutions.com
*Attorney for Michelle Johnson*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PRIMERICA LIFE INSURANCE COMPANY, a Utah Corporation<br><br>Plaintiff,<br><br>v.<br><br>DANIEL VETT FINLAYSON and MICHELLE JOHNSON,<br><br>Defendants. | **MICHELLE JOHNSON'S MEMORANDUM IN OPPOSITION TO DANIEL FINLAYSON'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>Civil No.: 2:24-cv-779 |

Defendant and Cross-Claimant Michelle Johnson ("Johnson"), by and through counsel of record, and hereby submits her Memorandum in Opposition to Daniel Finlayson's Motion for Summary Judgment as follows:

### INTRODUCTION

The standard for summary judgment compels denial when genuine disputes of material fact persist.  Cross-Claim Defendant Daniel Vett Finlayson's (hereinafter "Finlayson") Motion for Summary Judgment improperly asks the Court to ignore evidence of incapacity, fraud, undue influence, and the bargained-for agreement underpinning the policy.  These issues are

quintessential jury questions.  As detailed below, each of Finlayson's core arguments fails as a matter of law and fact.

Courts have long held that summary judgment is not a substitute for trial, especially when a party's intent, credibility, or mental capacity is at issue.  These matters involve the subjective state of mind, motive, and interpersonal relationships, areas where juries, not judges, are tasked with resolving factual disputes.  In this case, whether David Finlayson (deceased) had the mental capacity to change the beneficiary, whether he was unduly influenced, and whether a binding agreement existed with Johnson regarding the insurance proceeds are all questions that turn on credibility and conflicting testimony.  As such, the Court must deny summary judgment and allow a factfinder to evaluate the full evidentiary record at trial.

**STANDARD OF REVIEW**

Summary judgment is a remedy that should only be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  The Tenth Circuit has emphasized that, in evaluating a motion for summary judgment, courts must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Stewart v. Bd. of Comm'rs for Shawnee County, Kan.*, 320 F. Supp. 2d 1143 (2004).  When the facts permit competing interpretations, summary judgment is inappropriate.  As the Supreme Court explained and the Tenth Circuit has affirmed, "[w] here different ultimate inferences may properly be drawn, the case is not one for a summary judgment." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Seamons v. Snow*, 84 F.3d 1226, 1237 (10th Cir. 1996).

Courts are particularly cautious in granting summary judgment when the underlying claims implicate issues of credibility, mental state, or intent. These are quintessential factual questions best resolved by a jury. The Second Circuit has noted, and Utah federal courts have followed, that "summary judgment is rarely appropriate where intent and state of mind are at issue." *Colonial Pac. Leasing Corp. v. J.W.C.J.R. Corp.*, 977 F.2d 740, 743 (2d Cir. 1992), cited in *Fresquez v. Baldwin*, No. 2:12-CV-00234, 2014 WL 988679, at *9 (D. Utah Mar. 13, 2014).

Accordingly, where, as here, the dispute turns on the insured's capacity, intent, and whether the change of beneficiary was procured through undue influence or fraud, these issues demand resolution by a factfinder. Summary judgment must be denied.

## STATEMENT OF FACTS

1.    Michelle Johnson is a Utah resident and mother of five who, after being widowed in 2003, prudently invested $405,000 in two business ventures, IF Global Commodities, LLC and IF Global Congo, SPRL, based on her longstanding professional relationship with attorney David Val Finlayson. *See*, Affidavit of Michelle Johnson in Support of Opposition to Motion for Summary Judgment, ¶3, attached hereto as Exhibit A and incorporated herein by this reference.

2.    In return, Johnson was promised a 20% ownership interest in both entities and an equal share of the profits. *Id.* at ¶4.

3.    Her investment was substantial, and her financial future became directly tied to the health and success of David Finlayson's ("David") leadership of these businesses. *Id.* at ¶5.

4.      By 2014, David's deteriorating health, stemming from repeated trips to the Congo and exposure to serious illnesses, began to raise serious concerns about the stability of Johnson's investment.  *Id.* at ¶6.

5.      In response, David and Johnson agreed to purchase a life insurance policy explicitly designed to protect her financial interest.  *Id.* at ¶7-8.

6.      On December 23, 2014, David applied for a life insurance policy with Primerica Life Insurance Company, designating Michelle Johnson as the sole 100% beneficiary.  *Id.* at ¶9.

7.      The parties agreed that the policy would serve as financial security in the event of David's untimely death, and it included an "Increasing Benefit Rider" to account for lost interest on Johnson's investment.  *Id.* at ¶10-11.

8.      From the outset, this policy was not a mere insurance contract, it was the product of a bargained-for exchange.  *Id.* at ¶14.

9.      For the next several years, Johnson was consistently reassured by both David and the insurance agent, Ms. Jillyn Moore, that she remained the sole beneficiary of the policy.  *Id.* at ¶13.

10.      However, just 26 days before David's death by suicide on April 2, 2024, the beneficiary designation was changed to David's brother, Dan Finlayson, without Johnson's knowledge or consent.  *Id.* at ¶17.

11.      At the time, David was suffering from worsening memory loss and cognitive impairment, so severe, in fact, that he was reportedly denied a new insurance policy for his son due to those very health concerns.  *Id.* at ¶15-16.

12.     These facts raise serious concerns about David's capacity to make such a significant change and whether undue influence or fraud may have played a role.  *Id.* at ¶23.

13.     After being informed of the beneficiary change following David's death, Johnson acted promptly to preserve her rights and prevent distribution of the policy proceeds.  *Id.* at ¶20.

14.     She filed suit seeking declaratory relief, asserting breach of contract, conversion, unjust enrichment, lack of capacity, fraud, and equitable estoppel.  *Id.* at ¶4.

15.     Her claims rest on the express intent behind the insurance policy, her significant reliance interest, and the suspicious timing and circumstances of the change in beneficiary

## ARGUMENT

### I.     Interpleader Does Not Extinguish Johnson's Claims Against a Competing Claimant

Finlayson argues that because the policy proceeds have been paid into court, Johnson can no longer assert her rights. This is legally incorrect. As stated in *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999):

> "An interpleader action merely shields the stakeholder from liability; it does not adjudicate disputes between claimants."

Similarly, *Prudential Ins. Co. v. Hovis*, 553 F.3d 258, 263 (3d Cir. 2009) clarifies that claimants retain "full rights to interpleaded funds, including crossclaims and defenses."  Johnson's claims are properly before the Court and fully enforceable, even post-interpleader.

Federal Rule of Civil Procedure 13(g) expressly authorizes a crossclaim by one party against a co-party "if the claim arises out of the transaction or occurrence that is the subject matter

of the original action." Johnson's crossclaim against Finlayson falls squarely within this rule, it directly concerns the validity of the disputed beneficiary change and the rightful ownership of the interpleaded insurance proceeds. Contrary to Finlayson's assertion, the fact that Primerica deposited the funds into the court registry does not extinguish Johnson's right to assert her independent claims against him. Interpleader actions exist to resolve competing claims, not to insulate wrongful claimants from accountability.

As the Fifth Circuit made clear in *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999), "[a]n interpleader action merely shields the stakeholder from liability; it does not adjudicate disputes between claimants." Likewise, the Third Circuit reaffirmed in *Prudential Ins. Co. v. Hovis*, 553 F.3d 258, 263 (3d Cir. 2009), that "a claimant is not barred from asserting claims against other claimants for the stake, even after interpleader funds are deposited with the court." Here, Johnson timely filed her crossclaim under Rule 13(g), and Finlayson responded to it, placing the merits of the dispute directly before the Court for adjudication. The Court must now resolve that dispute on the basis of fact and law, not procedural fictions.

**II.     Material Disputes Exist Over the Validity of the Beneficiary Change**

Finlayson's Motion for Summary Judgment claims that David Finlayson had unfettered authority to change beneficiaries and that Johnson's interests were never vested. However, Johnson alleges a longstanding agreement and *meeting of the minds,* David agreed to secure her investment with the policy. Changing the beneficiary just 26 days before his death, during a period of cognitive decline, raises issues that only a jury can resolve. *Valcarce v. Fitzgerald*, 961 P.2d 305, 312 (Utah 1998) underscores that "[c]laims of fraud and undue influence present questions

6

for the trier of fact."  And *In re Estate of Bodily*, 945 P.2d 1236, 1240 (Utah Ct. App. 1997) confirms that a late-life change may be invalid if the insured lacked capacity or acted under undue influence.  These concerns directly parallel Johnson's factual allegations and preclude summary judgment.

The existence of a longstanding agreement between David Finlayson and Michelle Johnson concerning the life insurance policy creates genuine and material issues of fact that cannot be resolved on summary judgment.  Courts have repeatedly held that when a party alleges the existence of an oral agreement, particularly one concerning financial protection and reliance over time, credibility, intent, and context must be weighed by a jury.  Johnson has provided a detailed factual basis establishing that the policy was procured explicitly to secure her $405,000 investment and that she was assured for years that she was and would remain the sole beneficiary.

A sudden change of beneficiary, made without her knowledge, under suspicious circumstances, and while David Finlayson's mental and physical health was deteriorating, directly contradicts the longstanding course of dealing.  These circumstances raise a legitimate inference of undue influence and breach of agreement.  As the Utah Supreme Court noted in *Valcarce v. Fitzgerald*, 961 P.2d 305, 312 (Utah 1998), "[w]hether a person was induced by fraud or undue influence is a question of fact." Likewise, *In re Estate of Bodily*, 945 P.2d 1236, 1240 (Utah Ct. App. 1997), affirmed that "a change in beneficiary made when the decedent lacked mental capacity or was subject to undue influence is voidable."  These precedents foreclose summary judgment and compel a full trial on the merits.

### III.   Circumstantial Evidence Supports Johnson's Fraud and Undue Influence Allegations

Finlayson challenges the sufficiency of evidence supporting fraud or undue influence. Yet under Utah law, circumstantial proof is often enough. *Matter of Estate of Kesler*, 702 P.2d 86, 88–89 (Utah 1985), affirmed the jury's finding of undue influence based on timing, disability, and sudden changes. The same is true here: David's declining mental and physical health, his long-term assurances to Johnson, and the abrupt switch to Daniel, all establish suspicious circumstances warranting a jury determination.

In Utah, claims of undue influence and fraud are rarely proven by direct evidence and are instead established through circumstantial facts that, when taken together, support a reasonable inference of misconduct. The Utah Supreme Court has made clear that "undue influence may be proved by circumstantial evidence," and that "suspicious circumstances, coupled with a confidential relationship and mental or physical infirmity, can justify setting aside a transaction." *Matter of Estate of Kesler*, 702 P.2d 86, 89 (Utah 1985). In Kesler, the Court upheld a jury's finding of undue influence based on facts remarkably similar to those at issue here: a decedent in declining health, a sudden change in testamentary disposition, and a relationship of trust and dependence. Here, Johnson has alleged that David Finlayson was experiencing significant cognitive decline, had repeatedly confirmed her beneficiary status over the years, and then abruptly changed the policy in favor of his brother just 26 days before his death.

These facts, especially when viewed in the light most favorable to the non-moving party, create a compelling pattern of suspicious behavior that a jury must weigh. As provided in

8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." As such, summary judgment is wholly inappropriate.

**IV.  Constructive Trust, Promissory Estoppel, and Unjust Enrichment Are Supported by the Record**

Equitable remedies such as constructive trust remain available when a party acquires property through wrongful means, and summary judgment is inappropriate where the facts suggest the possibility of unjust retention. Under Utah law, "[a] constructive trust arises where a person holding title to property would profit by a wrong or be unjustly enriched if he were permitted to keep it," *Rawlings v. Rawlings*, 240 P.3d 754, 761–62 (Utah 2010). Johnson alleges that David Finlayson agreed to name her as the sole beneficiary to protect her $405,000 investment, and that the last-minute change to Daniel Finlayson was executed under suspicious and wrongful circumstances. If Daniel is permitted to retain the policy proceeds in disregard of that agreement and its equitable foundation, a constructive trust is the appropriate vehicle to restore what equity demands. These factual disputes make summary judgment improper.

Promissory estoppel similarly bars Finlayson's entitlement to the policy proceeds. The Utah Supreme Court in *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 15 held that promissory estoppel "may apply even in the absence of a formal contract when a promise, reasonable reliance, and resulting injustice are present." Johnson relied for years on repeated assurances by David and the Primerica agent that she was the sole beneficiary of the policy, a promise she accepted in lieu of pursuing other legal or financial protection for her substantial

9

investment.  Her reliance was foreseeable and reasonable, and if Daniel is now permitted to disregard that long-standing understanding, the result would be manifestly unjust.  This claim, too, must be heard by a jury.

Finally, Johnson has pled a valid claim for unjust enrichment, a doctrine grounded in fundamental fairness and one that resists summary dismissal where the record shows benefit, knowledge, and retention without justification.  Utah law recognizes that a party unjustly enriched at another's expense may be liable in restitution.  Here, Daniel Finlayson seeks to retain nearly $1 million in life insurance proceeds that were never intended for him and which he only acquired after a questionable change by his cognitively impaired brother.  Johnson's investment was the reason the policy existed; allowing Daniel to benefit would clearly confer an unjust gain at her expense.  At a minimum, these equitable claims require resolution at trial, not termination at the summary judgment stage.

### V.   Capacity and Testamentary Standards Require Higher-Level Analysis

Finlayson asserts David Finlayson had the capacity to make the change to the insurance policy, but Johnson alleges severe cognitive impairment and evidence from the beneficiary-change process itself.  Utah precedent requires deeper scrutiny under *Matter of Estate of Kesler*, which holds that mental capacity "must be capable of knowing and understanding… the nature and extent of his property."  702 P.2d at 88.  That glaring factual contradiction prohibits summary judgment and demands a trial.

Whether David Finlayson possessed the requisite mental capacity to change the beneficiary designation is a classic fact question, particularly given the evidence of his cognitive decline and

10

the timing of the change.  Utah courts have emphasized that "[m]ental capacity to make a testamentary disposition or similar transaction requires that the individual be able to understand the nature of the act, the property affected, and the relationship to those who may naturally claim a benefit," *Matter of Estate of Kesler*, 702 P.2d 86, 88 (Utah 1985).  Johnson has alleged not only years of memory loss and physical decline, but also specific facts surrounding the change itself, such as David Finlayson's prior admission that he could not pass a medical evaluation due to cognitive issues, which cast serious doubt on his ability to make a knowing and voluntary change just 26 days before his death.  The law demands that such conflicting testimony be resolved by the trier of fact.  Summary judgment is therefore improper when reasonable jurors could conclude that David Finlayson lacked the capacity to make such a consequential alteration.

**VI.    The Holman Case is Factually and Legally Distinguishable and Offers No Bar to Johnson's Claims**

Finlayson's reliance on *Holman v. New York Life Ins. Co.*, 2011 WL 1841259 (D. Utah May 17, 2011), is misplaced both legally and factually.  That case turned on the absence of evidence supporting the contestant's claims and the procedural failure to raise others.  In contrast, Johnson has pled and supported robust claims grounded in contract, equity, and incapacity, each of which is fact-intensive and not amenable to summary disposition.

In *Holman*, the court rejected the surviving spouse's claim to insurance proceeds where the insured husband had formally changed the beneficiary to his brother during a divorce, and the wife could not show evidence of a constructive trust, equitable interest, or the husband's incompetency at the time of change.  Notably, the court emphasized: "Stacy Holman has failed to show a genuine

11

dispute on the essential elements of a constructive trust claim, a wrongful act by Daryl Holman, which resulted in his unjust enrichment of specific property traceable to the wrongful behavior" (2011 WL 1841259, at *3).  In contrast, Johnson has identified specific evidence of fraud and undue influence, including David Finlayson's deteriorating cognitive condition, his abrupt change in beneficiary only 26 days before death, and a longstanding agreement in which Johnson provided valuable consideration in reliance on the policy being maintained for her benefit.  These elements clearly establish the factual predicate for constructive trust under *Rawlings v. Rawlings*, 240 P.3d 754, 762 (Utah 2010), which recognizes the remedy where a "wrongful act…resulted in unjust enrichment."

Moreover, *Holman* explicitly recognized that "[t]o have legal capacity to designate a life insurance policy beneficiary, the insured must have testamentary capacity," defined as the ability to "dispose of one's property understandingly, according to a plan formed in one's mind." (2011 WL 1841259, at *4, quoting *Estate of Kesler*, 702 P.2d 86, 88 (Utah 1985)).  Johnson has marshaled credible circumstantial evidence that David Finlayson could not satisfy this standard, raising precisely the "genuine issue of material fact" that the *Holman* court found lacking.  Where Finlayson had no cognitive diagnosis or challenge supported by record evidence, Johnson alleges and will present evidence of cognitive decline, prescription medication, and circumstantial irregularities surrounding the change in beneficiary, aligning with *In re Estate of Bodily*, 945 P.2d 1236, 1240 (Utah Ct. App. 1997), which cautions against ignoring these types of red flags in late-life changes.

Finally, while the *Holman* court emphasized that equitable claims should not disturb clear contractual beneficiary designations, the Utah Supreme Court has since reinforced that equity and contract can operate concurrently where fraud, undue influence, or unjust enrichment taint the designation. See *Valcarce v. Fitzgerald*, 961 P.2d 305, 312 (Utah 1998) ("[c]laims of fraud and undue influence present questions for the trier of fact"). Thus, even assuming *Holman* reflects a narrow reading of contractual rights, it does not, and cannot, foreclose a properly supported equitable and incapacity-based claim like Johnson's.

## CONCLUSION

Summary judgment is inappropriate where material facts remain genuinely disputed and the claims presented require the factfinder's careful assessment of credibility, intent, and circumstantial evidence. Michelle Johnson has brought forward substantial evidence showing that David Finlayson lacked the mental capacity to alter the beneficiary designation, that the change was inconsistent with a longstanding, bargained-for agreement, and that suspicious circumstances surrounding the last-minute switch to Daniel Finlayson raise legitimate concerns of fraud and undue influence. These are not legal abstractions, they are deeply factual questions that must be weighed and resolved by a jury under well-established Utah law.

Moreover, Johnson's equitable claims, including constructive trust, unjust enrichment, and promissory estoppel, are firmly grounded in both the facts of this case and governing precedent. Courts in Utah and across jurisdictions have consistently recognized that equity intervenes where contracts are abused, promises are betrayed, or unjust gain would result from wrongful conduct. Finlayson's attempt to short-circuit this process through summary judgment ignores these

principles and the compelling record now before the Court.  For these reasons, the motion for

summary judgment must be denied in its entirety, allowing Johnson her rightful day in court.

DATED this __22nd__ day of July, 2025.

_/s/  Joseph C. Alamilla_____/
Joseph C. Alamilla,
Attorney for Michelle Johnson

**CERTIFICATE OF SERVICE**

I hereby certify that on this __22<u>nd</u>__ day of July, 2025, I sent via United States Mail,

postage prepaid, by email, or otherwise delivered a copy by the E-Filing System of the foregoing

to the following:

SCOTT C. WILLIAMS, ESQ.
43 East 400 South
Salt Lake City, Utah 84111
Telephone: (801) 541-4726
scwlegal@gmail.com
*Attorney for Defendant Daniel Vett Finlayson*

    ___*/s/ Joseph C. Alamilla*____/
    Joseph C. Alamilla