UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **PRIMERICA LIFE INSURANCE COMPANY**, <br><br> Plaintiff, <br><br> v. <br><br> **DANIEL VETT FINLAYSON; MICHELLE JOHNSON,** <br><br> Defendants. | **MEMORANDUM DECISION & ORDER GRANTING IN PART AND DENYING IN PART CROSS DEFENDANT FINLAYSON'S MOTION FOR SUMMARY JUDGMENT** <br><br> Civil No. 2:24-cv-000779-AMA-DBP <br><br> District Judge Ann Marie McIff Allen <br><br> Magistrate Judge Dustin B. Pead |

This matter comes before the Court on the Motion for Summary Judgment filed by Cross Defendant Daniel Vett Finlayson,[1] as well as the Motion for Leave to File an Amended Memorandum in Opposition to Motion for Summary Judgment filed by Cross Claimant Michelle Johnson.[2] The Court did not hear oral argument. For the reasons below, the Court will grant in part and deny in part Mr. Finlayson's Motion for Summary Judgment and will deny Ms. Johnson's Motion for Leave to File an Amended Memorandum in Opposition.

## UNDISPUTED FACTS

In 2009, Cross Claimant Michelle Johnson, a widow with five children,[3] invested $405,000 into two businesses, IF Global Commodities, LLC and IF Global Congo, SPRL based

---

[1] ECF No. 21, filed July 9, 2025.
[2] ECF No. 36, filed February 3, 2026.
[3] ECF No. 23, Ex. 1 ¶ 2.

on an agreement with David Val Finlayson (the "Decedent"), who was Ms. Johnson's attorney at the time.[4] In exchange for the investment, Ms. Johnson was promised a 20% capital interest and a corresponding share of the profits in both companies.[5] Due to Ms. Johnson's concerns about the viability of the businesses and her investment, she and the Decedent agreed that the Decedent would purchase a life insurance policy that would protect Ms. Johnson's financial interests in the event of the Decedent's death.[6]

On March 1, 2015, Primerica Life Insurance Company ("Primerica") issued a Term Life Insurance Policy with a face value of $500,000 to the Decedent.[7] This Policy included an increasing benefit rider that increased the death benefit by a certain percentage.[8] On February 9, 2024, the increasing benefit rider was frozen, fixing the total death benefit of the Policy at $900,000.00.[9]

The Application for Individual Life Insurance pursuant to which the Policy was issued named Ms. Johnson as the sole beneficiary of the Policy.[10] The possibility of making Ms. Johnson's beneficiary designation irrevocable was discussed but not done due to the Decedent's assurances that it was unnecessary.[11] To that end, the Decedent continuously assured Ms. Johnson that she remained the sole beneficiary of the Policy over the years following its issuance, and Ms. Johnson relied on those assurances, taking no other steps to protect her investment.[12]

---

[4] *Id.* ¶ 3.
[5] *Id.* ¶ 4.
[6] *Id.* ¶ 7.
[7] ECF No. 1, Ex. A.
[8] *Id.* at 3.
[9] ECF No. 1 ¶ 1; ECF No. 7 ¶ 1; ECF No. 14 ¶ 1.
[10] ECF No. 1, Ex. B at 3.
[11] *Id.* Ex. E at 3.
[12] ECF No. 23, Ex. 1 ¶¶ 13–14.

However, on March 7, 2024, the Decedent accessed Primerica's secure online portal and changed the beneficiary designation from Ms. Johnson to the Decedent's brother, Cross Defendant Daniel Vett Finlayson.[13] A few weeks later, on April 2, 2024, the Decedent died by suicide.[14] Ms. Johnson was not informed of the beneficiary change until after the Decedent's death.[15]

Primerica received a claim form from Mr. Finlayson for the Policy's death benefit on May 23, 2024.[16] Primerica also received a letter, dated May 9, 2024, from Ms. Johnson in which she claimed entitlement to the Policy's death benefit on bases including that the change of beneficiary breached the purpose of the Policy and that the Decedent was in bad health at the time the change was made[17]—Ms. Johnson had been told that the Decedent had attempted to apply for an additional policy for his son but was denied coverage due to health and memory issues.[18]

On October 15, 2024, Primerica filed its Interpleader Complaint in this Court.[19] On July 21, 2025, Primerica filed its Motion for Interpleader Deposit and to Dismiss Primerica Life Insurance Company.[20] The Court granted in part and denied in part Primerica's motion on December 15, 2025, ordering Primerica to deposit with the registry of the Court the full amount of the life insurance benefit, $900,000.[21] The Court further ordered that upon depositing the

---

[13] ECF No. 1 ¶ 4; ECF No. 7 ¶ 4; ECF No. 23, Ex. 1 ¶ 17.
[14] ECF No. 1, Ex. C.
[15] ECF No. 23, Ex. 1 ¶ 18.
[16] ECF No. 1, Ex. D.
[17] *Id*. Ex. E.
[18] ECF No. 23, Ex. 1 ¶ 16. The Court notes that it does not consider this fact for the truth of the underlying matter asserted but rather only for the purpose of establishing that this is what Ms. Johnson was told.
[19] ECF No. 1.
[20] ECF No. 22.
[21] ECF No. 33.

funds and providing notice to the Court that the deposit had been made, Primerica was discharged from its contractual liability to pay the life insurance benefit and dismissed from the action.[22] Primerica filed its Notice of Deposit on December 24, 2025,[23] and was, pursuant to the Court's previous order, discharged and dismissed.[24]

Ms. Johnson filed her Crossclaim against Mr. Finlayson on March 14, 2025.[25] On July 9, 2025, Cross Defendant Mr. Finlayson filed his Motion for Summary Judgment.[26] Ms. Johnson filed her Opposition on July 23, 2025[27] to which Defendant replied on July 30, 2025.[28]

On January 26, 2026, the Court emailed counsel for both parties regarding the Court's inability to locate on Westlaw several of the cases and quotations in Ms. Johnson's Opposition.[29] The Court requested that counsel for Ms. Johnson provide copies of the cases at issue within seven days of the email.[30] Counsel for Ms. Johnson did not provide copies of the cases in response but rather stated that he had "confirmed several clerical and research errors that resulted in the inaccurate citations and quotations identified by the Court."[31] On February 3, 2026, Ms. Johnson filed a Motion for Leave to File an Amended Memorandum in Opposition to Motion for Summary Judgment.[32] On February 13, 2026, Mr. Finlayson filed his response opposing the request.[33]

---

[22] *Id.*
[23] ECF No. 34.
[24] ECF No. 33.
[25] ECF No. 14.
[26] ECF No. 21.
[27] ECF No. 23.
[28] ECF No. 26.
[29] ECF No. 38.
[30] *Id.*
[31] *Id.*
[32] ECF No. 36.
[33] ECF No. 39.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] "A fact is 'material' if, under the governing law, it could influence the outcome of the lawsuit."[35] "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmovant on the evidence presented."[36]

"In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[37] "The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party."[38] Rather, "[t]he litigant must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful."[39] In doing so, the nonmovant must set forth evidence of specific facts illustrating the existence of a genuine issue for trial.[40] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[41]

---

[34] Fed. R. Civ. P. 56(a).
[35] *Mauldin v. Driscoll*, 136 F.4th 984, 993 (10th Cir. 2025) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[36] *Id.*
[37] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).
[38] *Id.*
[39] *Id.*
[40] *Anderson*, 477 U.S. at 248.
[41] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

**DISCUSSION**

Motion for Leave to File Amended Opposition

Ms. Johnson seeks, pursuant to Federal Rule of Civil Procedure 15(a)(2), leave to file an Amended Memorandum in Opposition to Mr. Finlayson's Motion for Summary Judgment. Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Notably, the Federal Rules of Civil Procedure define "pleadings" as only "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."[42] Motions and memoranda in support or opposition to such motions do not constitute "pleadings" under the federal rules, and Rule 15(a)(2) is thus an inapposite basis for Ms. Johnson's request.[43] As such, Rule 15(a)(2) and its notion that leave to amend should be freely given do not govern the Court's resolution of Ms. Johnson's Motion.

Instead, it seems to the Court that Ms. Johnson's request is more appropriately viewed as a request to file supplemental briefing, as the request came after Mr. Finlayson filed his Reply, and the alterations in the proposed amended Opposition are substantive changes that go beyond mere edits of clerical errors. The need for supplemental briefing may arise when, for example, new issues are raised in a reply memorandum in support of a motion or at oral argument.[44]

---

[42] Fed. R. Civ. P. 7(a).

[43] *See Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1104 (D.N.M. 2017) (finding that a supplemental brief "is not a pleading" as defined by Rule 7(a)).

[44] *See Strand v. USANA Health Scis., Inc.*, No. 2:17-cv-00925-HCN-JCB, 2020 WL 13889792, at *1 (D. Utah June 25, 2020); *Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 928 (10th Cir. 2006).

"Whether to allow supplemental briefing on a newly-raised issue is a 'supervision of litigation' question [the Tenth Circuit] review[s] for abuse of discretion."[45] Similarly, courts have allowed supplementation of the summary judgment record when newly-discovered evidence is obtained after the filing of a summary judgment motion.[46]

Significantly, here, Ms. Johnson's request is not premised on the need to respond to newly-raised issues or to proffer newly-discovered evidence. As Mr. Finlayson has suggested, it appears that the initial Opposition may have resulted from the improper use of artificial intelligence ("AI"). Ms. Johnson's initial Opposition was riddled with case citations and quotations that the Court was unable to locate on Westlaw.[47] Ms. Johnson's counsel was unable to provide copies of the cases at issue upon the Court's request and sought instead to file more than six months after filing the initial Opposition an amended Opposition supported by different case law—case law that was available at the time of the initial Opposition's filing. The amended Opposition is also supported by evidence that had not before been proffered, yet there is no argument provided that this evidence was not available when the initial Opposition was filed.

The suggestions of the improper use of AI are concerning, and the Court cautions counsel to take greater care in submitting filings to the Court in the future. Moreover, while the Court appreciates the efforts to correct the citation issues and is sympathetic to the personal challenges that led to the filing of the initial Opposition, the Court, after careful consideration, does not find

---

[45] *Geddes*, 469 F.3d at 928.

[46] *See Payne v. Progressive Direct Ins. Co.*, No. CIV-22-461-SLP, 2024 WL 1323698, at *1 (W.D. Okla. Mar. 27, 2024) ("Plaintiff should be permitted to supplement the summary judgment record with evidence which was not available when he filed his motion."); *Oliver v. Meow Wolf, Inc.*, No. CV 20-237 KK/SCY, 2023 WL 5002462, at *5 (D.N.M. Aug. 3, 2023) (allowing supplementation of the summary judgment record by defendants where plaintiff did "not dispute that she produced the [evidence] after briefing on [d]efendants' Summary Judgment Motion was complete.").

[47] *See* ECF No. 38.

that allowing a new Opposition would be either appropriate or necessary under the circumstances. Although the citations have been corrected, the general thrust of the arguments raised in the proposed amended Opposition are the same as those raised in the initial Opposition, and the Court understands the law at issue and Ms. Johnson's positions. Thus, the Court does not find the proposed supplemental briefing useful in reaching its determinations. As for the new evidence proffered, there is no indication that this evidence was newly discovered after briefing on the Summary Judgment Motion was completed. The Court also does not find that this evidence provides any additional information beyond that already included in the affidavit submitted with the initial Opposition that is material. Therefore, the Court will deny Ms. Johnson's Motion for Leave to File an Amended Memorandum in Opposition to Motion for Summary Judgment and will rely on the initial Opposition that was filed on July 23, 2025.[48]

<u>Motion for Summary Judgment</u>

It is undisputed that Ms. Johnson's beneficiary designation was revocable and that nothing in the Policy itself prohibited the Decedent from changing the beneficiary to Mr. Finlayson. Ms. Johnson also does not argue that the Decedent failed to comply with the Policy's requirements for changing beneficiaries. Rather, Ms. Johnson's crossclaims challenge the validity of Mr. Finlayson's beneficiary designation on grounds of lack of capacity, as well as fraud and undue influence. Ms. Johnson also asserts crossclaims for conversion, promissory estoppel, and unjust enrichment.[49] Mr. Finlayson seeks summary judgment in his favor on all of

---

[48] ECF No. 23.

[49] The Court notes that Ms. Johnson asserts crossclaims for declaratory judgment and equitable estoppel as well. "[D]eclaratory judgment is a remedy, not an independent cause of action." *Utah Hous. Corp. v. Country Pines, Ltd.*, 541 F. Supp. 3d 1288, 1296 n.1 (D. Utah 2021). Thus, while declaratory judgment may be a possible form of relief for Ms. Johnson, the Court will not treat it as an independent claim here. And under Utah law, while promissory estoppel is a cause of action, equitable estoppel is a defense. *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 12,

Ms. Johnson's crossclaims.

Before addressing the viability of the crossclaims, the Court first turns to Mr. Finlayson's assertion that none of Ms. Johnson's asserted claims for relief other than, apparently, competency, "are of a sort that should be considered in the present action . . . [S]uch claims should have been asserted in a probate action, or should be brought in a separate legal action."[50] The reasoning underlying this assertion is unclear as Mr. Finlayson has failed to set forth any further argument or explanation on the issue. But it seems possible that the assertion may have arisen from some confusion surrounding how interpleader actions proceed. Generally, interpleader actions have "two distinct stages, with the court determining in the first stage whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants."[51] The second stage involves the adjudication of the "adverse claims of the defendant claimants[.]"[52] Because the Court previously determined that the interpleader complaint was properly brought and discharged Primerica from further liability to the claimants, the interpleader action is now in the second stage where the Court considers the adverse claims of the claimants. Ms. Johnson has asserted crossclaims against Mr. Finlayson, and all of Ms. Johnson's crossclaims relate specifically to the interpleader funds and her asserted claim to those funds. As set forth in its previous order, although Primerica has been dismissed from this action, the Court retains supplemental jurisdiction over these crossclaims under 28 U.S.C. § 1367.[53] That this action was brought in interpleader does not foreclose Ms.

---

158 P.3d 1088. Ms. Johnson's assertion of equitable estoppel is therefore more appropriately construed as a claim for promissory estoppel, which Ms. Johnson has asserted.

[50] ECF No. 21 at 10–11.

[51] *Clausen as Tr. of Brett M. Partridge Tr. v. Protective Life Ins. Co.*, No. 2:22-cv-00757-TC-DAO, 2023 WL 4137370, at *2 (D. Utah June 22, 2023).

[52] *Prudential Ins. Co. of Am. v. Sagers*, 421 F. Supp. 3d 1199, 1208 (D. Utah 2019).

[53] ECF No. 33 at 6.

Johnson from asserting her crossclaims here—indeed, determining which claimant has rightful claim to the interpleader funds is the very purpose of this stage of the proceeding.

It is also possible that Mr. Finlayson may be attempting to argue that the probate exception bars this Court from reviewing Ms. Johnson's crossclaims. As described in *Markham v. Allen*, 326 U.S. 490, 494 (1946),

> while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, . . . it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

In this way, "[t]he [*Markham*] Court observed that federal courts have jurisdiction to entertain suits to determine the rights of creditors, legatees, heirs, and other claimants against a decedent's estate, 'so long as the federal court does not *interfere with the probate proceedings*.'"[54] The Supreme Court clarified the "interference" language to be "essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*."[55] Therefore, "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court."[56] It does not, however, "bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."[57] Here, this Court's consideration of Ms. Johnson's crossclaims does not interfere with state probate proceedings. Ms. Johnson's crossclaims relate to her rights to the insurance proceeds. "There is no will at

---

[54] *Marshall v. Marshall*, 547 U.S. 293, 310–311 (2006) (emphasis in original) (quoting *Markham*, 326 U.S. at 494).
[55] *Id*. at 311.
[56] *Id*. at 311–312.
[57] *Id*. at 312.

issue. The [C]ourt is not being asked to administer the estate. And the probate court does not have custody of the insurance proceeds."[58] The insurance proceeds have, in fact, been deposited into the federal court registry.[59] Thus, the probate exception does not bar this Court from exercising its jurisdiction over Ms. Johnson's crossclaims.

As the Court is satisfied in its ability to consider Ms. Johnson's crossclaims, the Court will review each in turn.

## A.    LACK OF CAPACITY

"If the [D]ecedent was incompetent at the time" he changed the life insurance beneficiary designation, "the purported change is ineffective and [Ms. Johnson], as an original beneficiary may bring an action to avoid the change."[60] "[T]he proper standard for determining one's competency to change beneficiaries in a life insurance policy is a testamentary capacity standard."[61] "Designating beneficiaries on a life insurance policy, similar to executing a will, involves the individual making a unilateral choice as to who will receive the benefits of his estate."[62] Changing the beneficiary of an insurance policy "requires no more mental capacity [than] it does to make a will, the rule being that the insured must have had sufficient mind and understanding to comprehend the nature and effect of his act, and with such understanding, did voluntarily make the change."[63] There are three elements to the test of general testamentary capacity: "one must be able to (1) identify the natural objects of one's bounty and recognize one's relationship to them, (2) recall the nature and extent of one's property, and (3) dispose of

---

[58] *Life Ins. Co. of N. Am. v. Wagner*, No. 2:15-cv-00505-DS, 2016 WL 1494711, at *3 (D. Utah Apr. 14, 2016).
[59] *See* ECF No. 34.
[60] *Bergen v. Travelers Ins. Co. of Ill.*, 776 P.2d 659, 664 (Utah Ct. App. 1989).
[61] *Id.*
[62] *Id.*
[63] *Id.* (alteration in original).

one's property understandingly, according to a plan formed in one's mind."[64] Significantly, "[i]n determining competency, a testator is presumed competent, and the person contesting a will has the burden to show by a preponderance of the evidence that the testator was incompetent to make the will."[65] This presumption is applicable "when examining whether an insured was competent at the time he executed a document changing the beneficiaries of an insurance policy."[66]

In *Bergen*, the court found that there was sufficient evidence to create a dispute of fact as to whether the decedent was competent at the time he executed the letter changing the beneficiaries under the life insurance company. There was, in that case,

> sworn evidence before the trial court that the decedent was a chronic alcoholic who had previously been in treatment but had recently resumed his problem drinking, was suicidal, exhibited unpredictable antisocial behavior, was unable to complete simple tasks, made bad investment decisions, and exhibited drastic mood swings, as well as other examples of inappropriate behavior at the time he changed the beneficiaries on his life insurance policy.[67]

Here, unlike *Bergen*, there is no evidence that the Decedent suffered from unpredictable antisocial behavior, was unable to complete simple tasks, exhibited drastic mood swings, or demonstrated other examples of inappropriate behavior at the time he changed the beneficiary designation from Ms. Johnson to Mr. Finlayson. Rather, the Decedent's alleged lack of testamentary capacity remains entirely speculative. Although Ms. Johnson states in her affidavit that she was told that the Decedent had attempted to apply for an additional policy for his son but was denied coverage due to health and memory issues,[68] she has failed to offer any evidence establishing the truth of Decedent's health and memory issues or the extent of those alleged

---

[64] *Id*. (quoting *In re Est. of Kesler*, 702 P.2d 86, 88 (Utah 1985)).
[65] *Id*.
[66] *Id*.
[67] *Id*. at 665.
[68] ECF No. 23, Ex. 1 ¶ 16.

issues. And while the record indicates that the Decedent changed the beneficiary designation around a month before he died by suicide, given the presumption of competency, this alone is insufficient evidence from which a reasonable jury could find that the Decedent was unable to identify the natural objects of his bounty and recognize his relationship to them, unable to recall the nature and extent of his property, and unable to dispose of his property understandingly. In turn, no reasonable jury could find that the beneficiary designation was ineffective due to incompetency. Therefore, summary judgment in Mr. Finlayson's favor is warranted on this claim.

## B.    FRAUD AND UNDUE INFLUENCE

"When a confidential relationship exists between parties, and a transaction occurs that benefits the one in whom confidence is placed, a presumption arises that the transaction is unfair."[69] "This shifts to the benefiting party the burden to persuade the court that there was no fraud or undue influence exercised toward the other."[70] Bequests made under fraud and undue influence "are null and void."[71]

"The doctrine of confidential relationship rests upon the principle of inequality between the parties, and implies a position of superiority occupied by one of the parties over the other."[72] "While kinship may be a factor in determining the existence of a legally significant confidential relationship, there must be a showing, in addition to the kinship, a reposal of confidence by one party and the resulting superiority and influence on the other party."[73] "The relationship must be

---

[69] *Cunningham v. Cunningham*, 690 P.2d 549, 553 (Utah 1984*), abrogated on other grounds by State v. Mead*, 2001 UT 58, 27 P.3d 1115.
[70] *Id.*
[71] *In re Swan's Est.*, 293 P.2d 682, 694 (Utah 1956).
[72] *Bradbury v. Rasmussen*, 401 P.2d 710, 713 (Utah 1965).
[73] *Id.*

such as would lead an ordinarily prudent person in the management of his business affairs to repose that degree of confidence in the other party which largely results in the substitution of the will of the latter for that of the former in the material matters involved in the transaction."[74]

Here, Ms. Johnson has failed to set forth sufficient evidence from which a reasonable jury could find that a confidential relationship existed between Mr. Finlayson and the Decedent such as to give rise to a presumption that the beneficiary designation was unfair. All that can be gleaned from the record is that Mr. Finlayson is the Decedent's brother—there is no other evidence speaking to the nature of the relationship between the two. Kinship alone is insufficient to establish the existence of a legally significant confidential relationship. Without a confidential relationship, there is, again, no presumption that the beneficiary designation was unfair or, in other words, the result of fraud and undue influence. Summary judgment is thus warranted in Mr. Finlayson's favor on this claim.

## C.    CONVERSION

"Conversion is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."[75] "A basic requirement of conversion is that there be a wrongful exercise of control over personal property in violation of the rights of its owner."[76]

To the extent that Mr. Finlayson's assertion of his right to the interpleader funds could be considered an exercise of control over those funds, Ms. Johnson has failed to establish that this was wrongful or done without lawful justification. It is undisputed that Ms. Johnson's beneficiary designation was revocable and that the Decedent changed the beneficiary designation

---

[74] *Id.*
[75] *Nassi v. Hatsis*, 2023 UT App 9, ¶ 23, 525 P.3d 117.
[76] *Id.*

to Mr. Finlayson. For the reasons discussed above, the Decedent's changing the beneficiary designation was not invalid, as the record does not support a finding of lack of capacity or fraud and undue influence. Thus, Mr. Finlayson is the designated beneficiary of the Policy, and as such, he is lawfully justified in asserting his right to the interpleader funds. No reasonable jury could find otherwise. Summary judgment in Mr. Finlayson's favor is therefore appropriate on Ms. Johnson's conversion claim.

### D.     PROMISSORY ESTOPPEL

Promissory estoppel "contemplates circumstances where a party promises that things will be a given way in the future, knowing at the time of the promise all of the material facts, but is ultimately wrong, and where the other relied on that promise in acting (or withholding action)."[77] It is "employed where injustice can be avoided only by the enforcement of the promise."[78] Under Utah law, "[t]o make out a case of promissory estoppel[,]" a plaintiff must show the following:

> (1) [t]he plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff.[79]

The circumstances of the instant matter do not align with the elements of promissory estoppel. It was not Mr. Finlayson who made promises to Ms. Johnson but the Decedent— indeed, the record does not show that Mr. Finlayson had any involvement with or even knowledge of the Decedent's promises to Ms. Johnson. As such, Ms. Johnson has failed to establish a claim for promissory estoppel against Mr. Finlayson, and the Court will grant

---

[77] *Youngblood*, 2007 UT 28 at ¶ 16.
[78] *Hess v. Johnston*, 2007 UT App 213, ¶ 22, 163 P.3d 747.
[79] *Youngblood*, 2007 UT 28 at ¶ 16.

summary judgment in Mr. Finlayson's favor on this claim.

## E.    UNJUST ENRICHMENT

"Unjust enrichment occurs when a person has and retains money or benefits that in justice and equity belong to another[.]"[80] It is "a flexible and workable doctrine" "developed to remedy injustice when other areas of the law could not[.]"[81] Although "[m]ost instances of unjust enrichment result from two-party transactions in which benefits in the form of property or services—whether conferred or 'taken'—move from the [plaintiff] to the defendant[,]" such two-party transactions "are not the only context in which restitution may be available."[82] For example, as the Restatement (Third) of Restitution and Unjust Enrichment describes, liability for unjust enrichment may arise in circumstances "in which the defendant's enrichment at the [plaintiff's] expense results from the defendant's receipt of a benefit from someone else. If the benefit in question is one to which the [plaintiff] has a superior entitlement, the defendant is unjustly enriched."[83] "Thus, '[i]f a third person makes a payment to the defendant to which (as between [the plaintiff] and defendant) the [plaintiff] has a better legal or equitable right, the [plaintiff] is entitled to restitution from the defendant as necessary to prevent unjust enrichment.'"[84]

Under Utah law, a plaintiff must establish three elements to prevail on a claim for unjust enrichment: (1) "a benefit conferred on one person by another," (2) an appreciation or knowledge by the conferee of the benefit, and (3) "the acceptance or retention by the conferee of

---

[80] *Hess*, 2007 UT App 213 at ¶ 21.

[81] *Rawlings v. Rawlings*, 2010 UT 52, ¶ 29, 240 P.3d 754.

[82] *McAnulty v. Standard Ins. Co.*, 81 F.4th 1091, 1097–98 (10th Cir. 2023).

[83] *Id*. at 1098 (alterations in original) (quoting Restatement (Third) of Restitution & Unjust Enrichment ch. 6 intro. note (2011)).

[84] *Id*. (alterations in original) (quoting Restatement (Third) of Restitution & Unjust Enrichment § 48).

the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[85] "[U]njust enrichment, in the traditional sense of an inequitable retention of benefits, will support imposition of a constructive trust, even absent wrongful conduct."[86] "A constructive trust is a formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest[,] equity converts him into a trustee."[87] Constructive trusts "may be imposed as a form of relief once the plaintiff succeeds on a distinct cause of action[.]"[88]

In the instant matter, Mr. Finlayson had a benefit conferred upon him by the Decedent in being named the beneficiary of the Policy, and Mr. Finlayson has knowledge of that benefit. Thus, only the third element of unjust enrichment—whether "the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value"[89]—is at issue. "[D]etermining whether the circumstances surrounding the parties' interactions were inequitable is a fact-intensive process."[90] Here, Ms. Johnson states in her affidavit that, in 2009, she entered a business transaction with the Decedent to invest $405,000 into two companies in exchange for a 20% capital interest and a corresponding share of the profits in both companies.[91] The Decedent was Ms. Johnson's attorney at that time.[92] The Decedent and Ms. Johnson later agreed that the

---

[85] *Desert Miriah, Inc. v. B&L Auto, Inc.*, 2000 UT 83, ¶ 13, 12 P.3d 580 (citation modified).
[86] *Rawlings*, 2010 UT 52 at ¶ 47 n.62.
[87] *McAnulty*, 81 F.4th at 1098–99 (quoting *Beatty v. Guggenheim Expl. Co.*, 122 N.E. 378, 380 (N.Y. 1919)).
[88] *BMF Advance, LLC v. Litiscape, LLC*, 637 F. Supp. 3d 1272, 1288 (D. Utah 2022).
[89] *Desert Miriah, Inc.*, 2000 UT 83 at ¶ 13.
[90] *Rawlings*, 2010 UT 52, at ¶ 45.
[91] ECF No. 23, Ex. 1 ¶¶ 3–4.
[92] *Id.* ¶ 3.

Decedent would purchase the Policy and that Ms. Johnson would be the sole beneficiary of the Policy in order to protect Ms. Johnson's financial interest in the companies.[93] After the Policy was issued in 2015, the Decedent repeatedly assured Ms. Johnson over the course of nearly a decade that she remained the sole beneficiary of the Policy such that Ms. Johnson, relying on the assurances, took no other steps to protect her investment.[94] The Decedent then changed the beneficiary designation in 2024 without any notice to Ms. Johnson.[95] Based on these facts, and given the attorney-client relationship that existed between the Decedent and Ms. Johnson, the Court cannot say that no reasonable jury would find that there exists in this matter circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value. In other words, Ms. Johnson has presented sufficient evidence from which a reasonable jury could find in her favor on her unjust enrichment claim. Mr. Finlayson's request for summary judgment on this claim is therefore denied. [96]

## **ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that Cross Claimant Johnson's Motion for Leave to File an Amended Memorandum in Opposition to Motion for Summary Judgment (ECF No. 36) is DENIED.

IT IS FURTHER ORDERED that Cross Defendant Finlayson's Motion for Summary Judgment (ECF No. 21) is GRANTED IN PART and DENIED IN PART as follows:

---

[93] *Id*. ¶¶ 7–8.
[94] *Id*. ¶¶ 12–14.
[95] *Id*. ¶¶ 17–18.
[96] Because questions of fact exist as to Ms. Johnson's unjust enrichment claim, the Court "need not now decide what specific remedy[,]" whether that be a constructive trust or otherwise, Ms. Johnson "should receive if she prevails." *McAnulty*, 81 F.4th at 1108.

1. Summary Judgment is granted on the crossclaims for lack of capacity, fraud and undue influence, conversion, and promissory estoppel.

2. Summary Judgment is denied on the crossclaim for unjust enrichment.

DATED this 22nd day of April 2026.          BY THE COURT:

_____
Ann Marie McIff Allen
United States District Judge